UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAMERON HOSPITAL ASSOCIATION,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

No. 2:15-cv-01823-MCE-AC

**MEMORANDUM AND ORDER**

By way of this action, Plaintiff Dameron Hospital Association ("Plaintiff" or "Dameron") seeks an injunction, declaratory relief, and damages arising from Defendant State Farm Mutual Automobile Insurance Company's ("Defendant" or "State Farm") failure to pay Dameron benefits due under various patients' Uninsured Motorist Coverage ("UIM") and/or Medical Payments Coverage ("Med Pay") pursuant to the Assignment of Benefits ("AOB") contained in each patients' respective Conditions of Admission ("COA") paperwork.[1] Dameron asserts two causes of action: the first under California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200,

---

[1] As discussed below, some of these AOBs were signed by the patient/insured personally, and others were signed by family members.

and the second for breach of contract, based on its argument that State Farm failed to honor patients' assignments of first party insurance benefits to Dameron, thereby breaching the respective insurance policies. In other words, Dameron asserts that by failing to pay Dameron directly, a right it claims to have gained by way of the AOB, State Farm breached the insurance policy rights that were assigned to Dameron by the insureds.[2] Dameron's UCL claim is premised on that breach, and on its theory that State Farm engaged in a scheme to violate the AOB to Dameron. State Farm has moved for summary judgment of both of Plaintiff's claims, ECF No. 16, and Dameron has cross-moved for summary adjudication of State Farm's liability under its breach of contract cause of action only, and asks the Court to leave the issues of medical necessity and the reasonable value thereof, as well as its UCL claim, for trial, ECF No. 18.[3] For the reasons discussed below, both motions are DENIED.

## BACKGROUND[4]

Dameron's claims are based on services it provided to eight patients who entered its emergency room on different dates after being injured in eight separate automobile accidents. It is undisputed that Dameron provided services to each of the patients, that each of the patients is covered under one of two State Farm policies, and that each has UIM and/or Med Pay coverage under those policies.[5] Five of the insureds submitted a

---

[2] State Farm initially argues that it cannot be held liable for breach because it was not a party to the COA form. Def. Mot. at 18. But Dameron does not assert or allege that State Farm breached the COA. Rather, Dameron asserts that State Farm failed to pay Dameron the policy benefits assigned to it and that—as an assignee—Dameron may sue to enforce the contract, which is the insurance policy. Dameron has the better position.

[3] Having determined that oral argument would not be of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

[4] The following facts are derived from the parties' briefing and State Farm's submitted evidence. These facts are undisputed.

[5] This Order refers to the "patients" and the "insureds" interchangeably because there is no dispute that State Farm insured each of the patients at issue here.

2

claim under their UIM coverage; seven submitted claims under their Med Pay coverage. It is also undisputed that Dameron's COA paperwork includes an AOB, which form was signed upon admission by each respective patient or a relative of the patient. That AOB covers the UIM and Med Pay benefits at issue in this action.

The parties further agree that in each of the eight instances at issue here, Dameron advised State Farm of its claim that the patient's insurance benefits had been assigned to Dameron via the AOB, and Dameron requested that State Farm make direct payments to Dameron of any benefits that were recoverable. In each case, State Farm elected to pay either the patient, the patient's legal guardian, the patient's attorney, and/or another provider. State Farm has made no payments directly to Dameron.

The parties additionally agree that both of the policies at issue here contain an explicit payment provision, providing that State Farm may pay the insured, the injured party, or the provider, at its option.[6]

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for

---
[6] The language in the two policies varies slightly, but not materially.

3

summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Summary Judgment of Breach Of Contract Claim

In its Motion, and in its Opposition to Dameron's Motion, State Farm relies heavily on the fact that both of its policies at issue here expressly reserve the right to pay the insured, the injured person, or the medical provider. It follows that, even conceding that Dameron is an assignee, it has no greater rights than the assured/assignor, and therefore cannot require State Farm to pay anyone in particular, including Dameron. Put differently, even assuming the AOBs at issue here are valid, Dameron only gains rights pursuant to a contract that allows State Farm to pay its own insureds at its option. Dameron therefore cannot require State Farm to pay Dameron. Dameron, on the other hand, argues that State Farm's interpretation of its policies renders them unlawful.

According to Dameron, both statutory authority and case law has established that clauses that invalidate the assignment of money due or to become due are prohibited. And even though State Farm's policies do not contain explicit anti-assignment

5

provisions, its interpretation of the payment provision cited above essentially renders it an anti-assignment provision.  In other words, State Farm is attempting to circumvent the law by interpreting its payment provisions in a way that invalidates the patients' right to assign benefits (money due or to become due) to Dameron (or, presumably, to anyone else).  By claiming it can pay those benefits to whomever it chooses, regardless of assignment, State Farm is effectively quashing the patients' attempts to assign payment to a third party.

California Insurance Code § 520 provides that "[a]n agreement not to transfer the claim of the insured against the insurer after a loss has happened, is void if made before the loss . . . ."  Moreover, "after a loss has arisen liability is fastened upon the insurer and any right of the insured as a result of the loss may be assigned with or without the consent of the insurer."  Fluor v. Super. Ct., 61 Cal. 4th 1175, 1212 (2015) (internal quotation marks and citations omitted).[7]  In other words, State Farm's policies cannot at the outset (before any loss) prevent the insured from assigning any future insurance claim to whomever it chooses, once that claim has accrued.[8]  By interpreting its payment provision in a way that voids the insured's assignment of benefits, State Farm's policies do just that.

Dameron has the better argument.  Indeed, Dameron is not attempting to acquire rights greater than those of the assignor.  Rather, Dameron is attempting to assert the rights it obtained via the AOB, consistent with § 520 and Fluor.  And State Farm may not interpret its contractual provisions in a way that renders them unlawful, nor can it write its way around § 520 by calling it a "payment provision."

---

[7] Fluor discusses at length the applicability of § 520 to third party insurance coverage, the type at issue there.  Nonetheless, as clarified in Fluor, there is no dispute that § 520 also applies to first party coverage like the kind at issue here.  See Fluor, 61 Cal. 4th at 1194.

[8] As also discussed in Fluor, "cases demonstrate that in the first party insurance context, the statute's reference to 'after the loss has happened' should be interpreted to apply to the time period immediately after the injury or damage covered by the insurance policy has occurred."  61 Cal. 4th at 1205.  State Farm's argument that benefits were not yet assignable because services had not been rendered and there was no fixed sum to assign at the time the patient signed the AOB is therefore rejected.

6

In its Reply in support of its Motion and in Opposition to Dameron's motion, State Farm makes a number of secondary arguments—many of which are premised on its position that Fluor and § 520 do not apply here—in an attempt to establish summary judgment in its favor, but none are well taken. First, it argues that personal torts are not assignable. Here, however, the patients have not assigned their tort claims, they have assigned insurance benefits, which are contract based and thus assignable. See Fluor, 61 Cal. 4th at 1224. Second, State Farm contends that California law prohibits partial assignments absent the debtor's consent because they increase the debtor's potential burden.[9] That argument does not hold water because there is no indication that the assignments here were partial. Nor is it at all clear to the Court that State Farm's cited authority, Stein v. Cobb, 38 Cal. App. 2d 8, 10 (1940), survives Fluor. Third, State Farm argues—without support—that the use of the word "loss" in § 520 refers to property damage, whereas automobile policies such as those at issue here refer to "accidents." According to State Farm § 520 and Fluor (interpreting § 520) thus have no applicability in this case, which deals with an "accident" as opposed to a "loss." With nothing indicating to the contrary, the Court has no reason to believe that "loss" does not include loss stemming from an automobile accident. Indeed, Fluor's discussion of the meaning of "loss" indicates to the contrary. See Fluor, 61 Cal. 4th at 1216-17. Fourth, State Farm argues that because the AOBs were executed before medical services were rendered, there was no debt to be assigned because no actual sum was yet owed. Again, this issue is addressed in Fluor, 61 Cal. 4th at 1205, 1224. Because State Farm has failed to establish that judgment in its favor is proper, its Motion for Summary Judgment is DENIED.

The Court nonetheless finds, however, that summary judgment in Dameron's favor would be inappropriate because State Farm has shown that disputed issues of fact prevent such a ruling. Such questions surround the validity of the COA forms signed by

---

[9] To the extent State Farm argues that the insureds were prohibited altogether from assigning any benefits absent State Farm's consent, that argument is also foreclosed by Fluor, 61 Cal. 4th at 1224.

the patients or their family members.  Specifically, in its Opposition to Dameron's Motion, State Farm argues that "there are disputed questions of fact as to whether Dameron's COA form is unconscionable based on the specific facts related to the injured patients listed in Dameron's complaint."  Opp. at 5.  Dameron, of course, argues that its COA is neither procedurally or substantively unconscionable, but this is a question of fact for a jury's determination, not appropriate on summary judgment.  Moreover, the validity of the signatures on the forms—whether the patient's or a family member's—raise additional factual questions including whether the patients were in proper condition to sign, and whether family members' signatures bind the patient.  Dameron only seeks a Court ruling with respect to State Farm's liability, and asks the Court to reserve the issues of (1) medical necessity, and (2) reasonable cost for services, for trial.  But the validity of these specific COAs goes to State Farm's liability and, as such, precludes even partial summary judgment.

For the reasons stated above, the Court DENIES both State Farm's and Dameron's requests for summary judgment of Dameron's breach of contract cause of action.

### B. Summary Judgment of UCL Claim

Dameron does not move for summary adjudication of its second cause of action for violation of California's UCL, but does oppose State Farm's motion for the same.  In its Motion, State Farm argues that it has not violated the UCL because there is nothing unlawful or unfair with State Farm following the express terms of its policies, which allow it to pay the insured, the injured party, or the provider, at its option.[10]  Indeed, as State Farm points out, it does not avoid liability by paying its insured instead of Dameron, and Dameron can avoid injury to itself by simply pursuing payment from the patient.

---

[10] Relatedly, State Farm argues that its own contract provides it a "safe harbor" from a UCL attack because its conduct complied with the express terms of the contract, which is not contrary to law.  State Farm misses the mark.  While its contract may not by its terms be unlawful, the way it employs the payment provision to essentially workaround the patient's assignment is contrary to § 520 and Fluor.  Under these circumstances, State Farm cannot assert that its contract provides a safe harbor such as those created when the Legislature specifically condones certain conduct.

8

For its part, Dameron asserts that "it is both unlawful and unfair for State Farm to systematically and repeatedly take action[s] that violate the assignments of benefits to Dameron . . . ." Dameron Opp. at 13. Dameron avers that its UCL claim is not based on these eight breach of contract claims, but on State Farm's "systematic scheme to violate the assignment of first party insurance benefits to Dameron," contrary to established law and longstanding public policy. Dameron asserts that not only is the practice unfair, it is also unlawful because the breaches of contract—the predicate violation—is unlawful. The Court agrees that at a minimum, a factfinder may find State Farm's conduct to be unfair, and possibly unlawful.

Finally, State Farm asserts that Dameron's UCL claim cannot stand because under the UCL Dameron can only seek two remedies that are not available here: an injunction or restitution. Specifically, "Dameron seeks to enjoin State Farm's systematic violation of its insureds' assignment of first party insurance benefits to Dameron, and to obtain restitution of the benefits State Farm retained by its unlawful practice." Dameron Opp. at 18.

State Farm asserts Dameron is not entitled to restitution because it does not claim it ever paid anything to State Farm that could be paid back by means of restitution. Dameron does little to counter this argument, and it appears to the Court at this time that restitution is not available. But the Court disagrees with State Farm's position that an injunction cannot be had. State Farm contends that an injunction is not a valid request for relief because injunctive relief is not a proper remedy to prevent a breach of contract, which is Dameron's only underlying claim. Instead, monetary damages are available to compensate Dameron for any losses it might have suffered. Though an accurate statement of the law, Dameron contends that its UCL claim is not based (or, at least, not solely based) on State Farm's breaches, but on State Farm's systematic scheme to avoid the insureds' assignments of benefits. Thus, while Dameron's "unlawful" premise may be the breach of contract claim, its assertion that State Farm's practice is "unfair" is based on more than a simple breach. Indeed, "courts have repeatedly held that conduct

would give rise to a UCL violation that would not otherwise sound in tort or be unlawful," Smith v. Chase Mortg. Credit Grp., 653 F. Supp. 2d 1035, 1046 (E.D. Cal. 2009), and the Court is aware of no authority suggesting that an injunction cannot issue to enjoin an unfair pattern of business practice, even where that practice involves a breach of contract. State Farm's Motion for Summary Judgment of Dameron's UCL claim is therefore DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 16, and Plaintiff's Motion for Summary Judgment, ECF No. 18, are DENIED.

IT IS SO ORDERED.

Dated: March 22, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE